Did we? Did you call it? Okay. Counsel for the Northwestern. May it please the court. Good morning, your honors. Karen DeGrand and Richard Donohue on behalf of the defendant appellant, Northwestern Memorial Hospital. Today we ask the court to reverse the trial court's order granting plaintiffs' request for a new trial limited to damages only. The jury's assessment that the decedent was 49% contributorily negligent should be reinstated. But our position is that even if the court were affirmed in its determination that the contributory negligence instruction should not have been given, in no event would the plaintiff be entitled to a new trial limited to damages. But setting aside the matter of relief for the moment, I'll begin by addressing the issue of contributory negligence. And of course, as the court, I'm sure, is very well aware from our briefs, the whole of our case out of the Supreme Court is the governing opinion. It sets a standard which is driven very expressly, as the court reflects in its decision, by the public policy issue. The public policy issue, I think, was itself driven by the facts of that case. The court talked about making sure that hospitals aren't made insurers of patients. But that's because, I thought, because the patient had been released and was no longer under the control of the Well, Your Honor, I have to disagree. Because the focus of the Supreme Court in Hobart was not on the extent of the duty of the defendant as much as the focus being truly on the state of mind of the decedent. It was because that was driven by the parties and the issue that the court agreed to hear. But in a certain sense, Hobart concerned perhaps negligent release of the patient. Underlying that sort of ultimate injury to the patient, there's suggestion that she should never have been released to begin with. And to that extent, I just don't see how the Hobart language can apply with full force in this case when the decedent remained a patient. Your Honor, I would direct the court's attention with that question to the way the court articulated the standard, which was that for patients under treatment for suicidal tendencies who encompasses the custodial situation that Your Honor is directing the attention to versus the outpatient situation. But that concept of being under treatment for suicidal tendencies is present in both situations. And the public policy concern that if the contributory negligence defense is foreclosed completely, then what are these institutions, what are these healthcare givers to do? And what is the patient to do when the healthcare givers close their doors to patients who are that ill? Do you recognize the difference between inpatient and outpatient? Inpatient, in a sense, hospitals are insurers. I mean, they are in the sense that they take control over, they have a great deal of control over the care and safety of the patient. When the patient is out on her own, that's totally outside of the hospital's control. And no one can expect to have a patient out on her own being monitored. But there's no indication from Hobart, I'd submit, Your Honor, that the determination or the public policy concern should be different in the custodial situation. And bear in mind that the Hobart case has been rejected, a case that's much closer to the custodial situation than the Hobart facts. And that's the DiMera case in which the patient, while not at the time of committing suicide, having been in custody, had convinced his physician, while an inpatient, to let him go and convince, this opinion suggests that the patient convinced his physician with the intention of doing harm to himself. And within a very short time, I think on the same day, the patient ingested prescription drugs that were given by the physician and wine and took his own life. So, you know, it's not, I don't think that it's as clear cut. And when you, and when the court looks at, and I'm sure the court has, you know, the panoply of these cases, it's not I don't mean to suggest that there's a bright, clear line. I simply mean that sometimes the language in cases are driven by the facts in those cases. And when the facts differ, the language may not be quite the same. And the question is really whether the contributory negligence instruction should have been given here. And why don't we at least begin to talk about when you think such an instruction should not be given? I think that the Hobart decision makes that clear, Your Honor. Well, tell me. And the way the standard is articulated is that unless the only rational conclusion that the court can draw from the evidence, and that's all the evidence, unless the only rational conclusion is that the patient was completely devoid of judgment, they set the standard very high, and they did it on purpose, Your Honor. I understand the standard, and I think the language you accurately quote. My concern is this. That if the, if the standard is so high, why would that case even ever go to trial? Why would that case ever be a litigated matter? If the standard is so high that settlement is called for because everyone agrees what the evidence is, the evidence only has one, one way to be taken, that sounds like it should have been settled. Well. And it should never have gone to trial to begin with. Right. But that can't be the standard. I mean, really, that cannot, it cannot be applied in the literal sense, I don't think, because aren't there, and really, I guess it goes to this. Is that a question of law, or is that a question of fact? Do we allow the jury, do we allow the judge to say, you know what, this is a close case. This is a case where that standard may, in fact, not apply. And therefore, I'm going to allow the jury to, you know, I'm not going to instruct the jury on contributory negligence, but of course the jury can always come back and say no liability, which is fine. The jury can do that, but you know, these aren't the days of contributory negligence where it completely forecloses recovery, Your Honor. And of course the jury was instructed in this case, as it is in all cases where there's contributory negligence, that if you find over 50 percent, there's going to be a verdict for the defendant. Now the jury knows that, and the jury in this case came back with 49 percent. Presumably, and I think it's a fair assumption, based on Hobart and based on the facts of this case, if the facts had been different, the jury would have held the plaintiff less accountable. So, you know, there's again, there's a whole spectrum. It's not as though, it's not as though the contributory negligence defense completely forecloses recovery, and the Supreme Court made the determination in Hobart that the extent to which that defense is applicable is a question of fact for the jury. Now, there is, there's a threshold issue for the court, as there is essentially with all questions that are usually questions of fact, and that is, does all of the evidence point one way? That the patient is completely devoid of reason. And so do we, once the judge answers that very question, and says, I was wrong the first time, I now see the evidence differently, I now see the evidence that it can, that it does point all in that way. That decision having been made, don't we owe some deference to that judge? In fact, we do, don't we? Absolutely. It's a discretion standard. Yes, that's the standard of review here. And so why, you're asking us to rule that as a matter of law, this case didn't approach it, or didn't meet that standard, and, or at least from the judge's perspective, who was the one sitting there hearing the evidence, looking at the witnesses, maybe even looking at the jury in terms of their reaction to the evidence, and say that, no, the judge got that wrong, and we can do that. And so the problem I have is that what possible case can there be where the judge would be upheld in saying, you know what, I got it wrong the first time, I now think that no contributory negligence, or the jury should never have been instructed on it. Well, my answer to that question, Your Honor, is it would be a case without testimony such as this, where Dr. Carbonell, who had been treating this patient over many years, over a period of I think four years or so, and had seen her. And that's, that's, I understand, I don't mean to keep interrupting, but of course the plaintiff keeps talking about how they presented an expert witness on that issue, on the issue of whether or not she had any rational thinking, or whatever the expert witness had, that you did not present an expert witness on, you seem a little unsure of what I'm saying. I know what the court is saying, but I disagree with it, but please finish your question. Well, was there an expert witness on that issue, from your side? Well, first of all, the plaintiff's expert witness testified that at times during the submission, the plaintiff, or rather the decedent, was not capable of caring for her own safety, and I have two responses to that. No, we did not have an expert specifically say she was capable of caring for her own safety. We had testimony, and certainly in Hobart, we know that it's not driven, that issue is not governed solely by expert testimony. The Hobart case looked at all the circumstantial evidence. So we don't have to necessarily rebut that with an expert opinion. And certainly there's other expert testimony, Dr. Spicer's testimony, Dr. Carbonell's testimony, that during the timeframe, and again, stepping back to the Carbonell assessment, or rather to the Hobart assessment, the court particularly looked at the day of death, but also looked at the days and weeks up to the date of the suicide, and said, here, we're looking at this, and let's see what evidence there is that this person could exhibit some rational thought. And part of the evidence, the plaintiff mistakes Hobart to the extent that she suggests that the decision in Hobart was governed by expert testimony. It wasn't. There's no reason to call into question, they can present their version of Hobart, but ultimately we'll decide what Hobart stands for. Well, I do want to emphasize that. Let me go back to Hobart and the dilemma I'm trying to deal with here, or we're trying to deal with, and that is, you know, when the judge says it's a close case, and maybe wrongly instructed on contributory negligence, and, you know, the Hobart court itself was divided on that, on whether or not, certainly contributory negligence, should be given. There's no question about that. That is the clear law in Illinois, even in a suicide case. All seven of them agreed with that. All seven agreed on that. The three that didn't agree was that sometimes the contributory negligence instruction should be tempered by a diminished capacity instruction. Correct. And that's what Justice Freeman, Chief Justice Freeman at the time, Chief Justice at the time, Freeman advocated. And quite honestly, one of the issues, you know, because you have to consider everything, I'm not sure how this case is going to turn out, but one of the interesting instructions that was in the California case upon which, you know, the majority and the dissent agreed upon, demarcated by Martini, where they, the California court instructed something to the effect of a diminished capacity instruction, stating that if the, maintaining the rationality of the patient as a question of fact, if the jury should find that the patient was in a mental condition that he or she was likely to, you know, harm herself or himself, or was not capable of realizing the consequences of his act of caring for his own safety, and that the defendant hospital with knowledge of plaintiff's condition had undertaken to safeguard him and protect him against himself, then I instruct you that as a matter of law, the plaintiff was not guilty of contributory negligence. And so the question is whether that sort of diminished capacity instruction, whether it's no contributory negligence instruction at all, or a contributory negligence instruction while tempering that by instructing the jury that if you find the facts to be that the hospital, that she couldn't, she wasn't a reasonable person, wasn't able to exercise ordinary care for herself, that you can disregard contributory negligence totally. I have two responses to that, your honor. The first is that Hobart specifically responded to that concern by the dissent. Well, but hold on, because there the dissent said we think that the diminished capacity instruction should be given. The majority said it doesn't look like it to us, but here we are confronted where a little closer case, and whether or not maybe the diminished instruction should be given. But I think the same principle should apply. I have two responses to that question. The first is under Hobart, and, you know, the court obviously is aware that the majority thought that that issue would be addressed by the language in IPI 1002, which instructs the jury to take into account all the circumstances. Then my second response is that that issue has been waived by the plaintiff here. And the plaintiff had made a passing reference to diminished capacity in her statement of facts in the appellate court. In the trial court, the plaintiff didn't ever tender a diminished capacity instruction. I'm aware that the plaintiff has said, well, judge. I understand the waiver argument, but here's the situation. Correct. Let's say we were to agree that a remand is in order and that the question becomes whether it's damages only or a full retrial. Shouldn't we, in fact, instruct the judge that he still has he's certainly within his discretion under the facts of this case to say no contributory negligence, but shouldn't we also bring up the possibility that or you can say, yes, you can have a contributory negligence, but you should also temper that if you feel that the facts warrant it with a diminished capacity instruction, similar to the one in DeMartini. So it's not waived in that sense. I mean, it certainly doesn't tie our hands. The waiver is not a limitation on the appellate court. I agree with that, Your Honor. And again, I go back to Hobart, which believed that 1002 took care of that issue and placed in the jury's hands the instruction to consider all the circumstances, including the mental capacity. I'm sorry, Your Honor. I'm sorry, I keep interrupting you, but let's say would you see a difference if that under the circumstances instruction, isn't that the equivalent of what I just quoted here from DeMartini, but it says it in a separate instruction, which requires the jury to sort of consider it separately from the plaintiff's case. I mean, you could lose the significance of the particular circumstances that the plaintiff was in. Well, my response to that, Your Honor, is I'd want to see what specific instruction was being tendered before I could truly respond to that. But my second response to that is you run the risk, potentially, of overemphasizing and basically negating the contributory negligence. And I think that that is a very strong point for supporting what the Supreme Court did in this case, particularly in light of the general principle that we follow the IPIs when they govern a particular situation, they've been tested and so on and so forth. There's no need to give non-IPI instructions. And I understand where it may negate it, but it negates it not in a legal sense. It negates it only in the factual sense. I mean, it's not a legal sense. And that is for the jury to decide whether or not it is fully negated by being convinced by the facts that she was not able to exercise ordinary care. Well, there's nothing about the B1003 that says the jury has to determine that there's contributory negligence. True. And that's my response to that. The jury is certainly free under those two instructions to reach that conclusion and potentially could or potentially could assess a very small amount of contributory negligence, depending on the factual situation. And that's the point of Hallgard. And when you raise the issue of 49 percent contributory negligence on the part of the decedent, were you suggesting some sort of compromised verdict? No, I'm not. I'm not suggesting there's a compromised verdict. I think that the jury looked at the facts, and although from our side, we believe that the testimony certainly would have supported a verdict for the defense. You know, the jury made its allocation of fault and came to its conclusion on its own. Let me finally just ask you, what sort of alternative results are you looking for here? First, of course, you're looking for an outright reversal. But short of that, what are you really asking for? Well, this is our position, Your Honor. Good. Yes, we ask for reversal of the order on the post-trial motion. And the alternative to that, our position would be, if the court felt that it should affirm the trial court's determination that there should be no contributory negligence instruction, then the remedy, and it's clear from the Junker case out of the Supreme Court, the remedy is not to send it back for a new trial on damages only. It's got nothing, if anything, that's backwards. If there were going to be any kind of a limited retrial, it would be on liability only. Damages is all set. And that's exactly what happened in Junker, where the plaintiff said, I want a new trial on damages only. Except in Junker, the trial judge gave them a new trial on all damages. Everything. Yes. And then in the appellate court, they sought to override the exercise of the trial court's discretion by virtue of the appellate court and then the Supreme Court. But here we have the reverse in the sense that we're looking at the exercise of the trial court's discretion to grant a damages-only retrial. But, Your Honor, may I also point out that while there is a difference to the trial court's discretion to grant a damages-only retrial, the appellate court, there is also great respect reflected in all of the decisions for the damage calculation of the jury. And that was going to my next point. I'm sorry to keep interrupting. That's okay. Aren't you asking, aren't you, as a third alternative or a second alternative, that we really just uphold the verdict? That the court, if the court I mean the damages award. The damage award should be upheld. Absolutely. The $400,000. Correct. So if the court made the determination that contributory negligence shouldn't have gone to the jury, then you go back, you pick up the award, and you say, fine, we're not reducing it. And zero contributory negligence. Zero contributory, judgment for $490,000 and change, whatever it was, exactly. Yes, that's exactly right, Your Honor. And if the court, for some reason, and I don't see why this would ever be necessary, so again, in the alternative to the alternative, relief would be, if the court thought that there had to be a new trial, absolutely not limited to damages. There's just, there's not one case anywhere. In fact, all of the cases that are cited in the briefs point in the opposite direction. So there's no basis for that. We'll give you a couple minutes for rebuttal. Okay. Thank you very much, Your Honors. May it please the Court. My name is Barbara D. Kline. I represent the plaintiff, respondent, appellee. What we're asking you to do here today, Your Honors, is to affirm the decision of the trial court to reduce the amount of damages and to award a new trial on damages only. That is entitled to substantial deference. The purpose of a post-trial motion, as you well know, is to give the court an opportunity after hearing all the evidence, evaluating all the witnesses, hearing the closing arguments, and then reflecting on the law and reflecting on the evidence. Reflecting on the arguments of counsel in their post-trial motions when you're outside the passions of the advocacy war of the trial itself to determine whether justice was done in the case. All right. Let me interrupt you now, Ms. Kline. Sure. I certainly agree that, you know, deference is owed, but that, when a new trial is granted, that is the abuse of discretion standard. Exactly. And no doubt about it. But sometimes the basis for the new trial borders on a question of law, or at least the application of a legal standard to the particular facts. And a damages only retrial is a fairly unusual retrial. I agree. And it's unusual for a reason, that it should only really happen in limited circumstances. And the case laws tends to say what you need to show to be entitled to that. And I think our Supreme Court in Junker, at least, set out the factors that must be established in order to determine whether before a retrial and damages only can be obtained and affirmed on appeal. Well, I think Junker is distinguishable from the case so far for the following reason. Junker involved multiple defendants in which different acts of negligence were alleged. So in order to achieve justice, you would have to come to a conclusion that the defendants were guilty. You would have to compare the comparative negligence of the plaintiff against the relative negligence of the individual defendants who were alleged to do different acts of negligence. That's not the situation here. But in reality, you don't have to do that in a single trial. You could have one plaintiff versus one defendant and then a contributory action between the competing defendants and let those get decided separately. Well, there was only one defendant here.  And Junker is different. Here's the problem I have with a damages only retrial. How is that done? I don't even know how that could be done as a practicality. You're going to get into liability. It's just difficult to say only damages. I mean, how do you do that? Well, Your Honor, it's done all the time. I know it's done. Admitted liability cases. But we've also had a case and it was Justice Lampkin's decision where liability was admitted and yet liability issues kept cropping up and fault kept being improperly raised because it's difficult to avoid. That's my point. And then we ended up and I agreed with Justice Lampkin's decision in reversing. It can be difficult to avoid in certain circumstances. And so to avoid that sort of retrial, why isn't the better solution simply a trial on all issues as opposed to a forced, sort of a contrived trial on damages only? Or upholding the damage award only? Or just upholding the damage award 100%? Those are two completely different questions and I'd like to address that. First of all, the court in this case found that the combination of the contributory negligence instruction and the conduct of counsel was so prejudicial to the plaintiff. None of what you're saying, the way you're saying it, the judge had about five lines. I appreciate that. The judge really didn't say why he changed his line. He just says I think I misread Hobart and because of conduct I'm going to grant a new trial on damages only. That's what he said. So when there's less for us to give deference to, if there's less reasoning for no reasoning, it approaches a question of law that or at least diminishes the deference that we're going to give. And I quote oftentimes the Supreme Court, U.S. Supreme Court case, I think it's Kuhn that talks about how when a judge makes a mistake in law, standard overview doesn't really matter. It doesn't matter what the standard is. Right. Well, it's my position that the judge did not, well, he made a mistake in law in the trial, but did not make a mistake in law in his decision to award a new trial. Would you concede that he made a mistake or he didn't help us, didn't give us any insight into his reasoning by failing to explain his ruling? I would agree with that, Your Honor. I mean, he did what he did. So we don't blindly give deference, do we? Don't we defer when a decision is, you know, explained and reasonable minds could disagree. But when it's not explained, it's difficult. Well, let me give you an argument as to why I believe in this case a new trial on damages only would be appropriate. And first of all, and not just reinstating the award and taking away the 49 percent. Well, let's go on to Justice Lampkin's point that why didn't the jury properly assess the total damages in this case? Well, first of all, Your Honor, the suicide is not like other acts. That was maybe an imprecise question. What error did the judge find that would call into question the damages award? Right. The contributory negligence instruction in and of itself under the facts and circumstances of this case. Do you have any authority for claiming that the instruction on the total damages award? I'm not aware of any such case. What I'm trying to suggest to the court is that suicide is different. This is not like stepping into a hole because you're not paying attention to where you're going or driving too fast to avoid an accident that's caused by the negligence of another. I have to disagree with you, counsel, because what is shared by all those cases is the evidence. And the evidence is what dictates the damages. And the evidence presumably doesn't change. That's exactly what I was going to say. If the evidence doesn't change and the judge incorrectly gave a contributory negligence instruction, even if you take the instruction away, how does that impact the damages? That's what you're asking. How does it impact the damages award if there were no instructions that were incorrect that went to the issue? First of all, the jury was instructed that the plaintiff decedent was under a duty to exercise ordinary care. It is our position that the evidence was overwhelming and undisputed that she was incapable of exercising ordinary care on her behalf. If she was capable of exercising ordinary care on her own behalf, the implication is that she had so little regard for her own life or the feelings of her family that she killed herself despite that. And that's highly, highly prejudicial. I mean, we have to admit the stigma involved in suicide. Suicide has long been considered the unforgivable sin that someone who commits suicide is not entitled to rights of burial of the church or burial on sacred ground. Suicide is something that brings shame and disgrace upon the family. Do you think the instruction would change that? I think the lack of the contributory negligence instruction would have changed that. Yes, I do, Your Honor. I very much do. Because the implication was that she had the capacity to prevent her own self-destruction when the evidence, the totality of the evidence was that she was a very, very sick person with impaired judgment who required hospitalization in a locked psychiatric unit in order to protect her from the very thing that she did. And that the hospital in undertaking this, this is completely different from a situation where a patient is out on their own and there is no control. So it's almost like saying, I mean, the courts have struggled with this concept for years, that someone who intentionally self-destructs should be compensated for their own intentional act. And the law has evolved over the years so that we have a greater understanding that under certain circumstances due to mental illness, the person lacks the capacity to protect themselves from themselves. And that's exactly the case that we have here. And I understand that. But what's where is the problem with allowing 12 different individuals deciding all the issues as opposed to damages only? Because damages only is built upon a decision of liability by distinct 12 individuals. And while we're really looking for a reasonable jury. I understand your point, Your Honor. And the only thing that I can tell you is that it adds tremendously to the expense and the extensiveness of the trial. It requires calling back all the liability witnesses. This was about a three week trial. All the liability witnesses, all the expert witness that's associated with that. And I think in this case, the issues of liability and the issues of damage are not so intertwined. I think that the ruling that she was not capable of contributory negligence is one that should have been made as a matter of law. Obviously notwithstanding. And I rely on Hobart. Hobart anticipated that there would be cases. And let me ask you, between no contributory negligence instruction and a contributory negligence instruction with what I thought you had suggested, a diminished capacity instruction, which of those two do you think is the proper remedy? Well, I think in this case the proper remedy was to rule that she was incapable of contributory negligence as a matter of law. Then we're talking about taking away that question from the jury. And the Supreme Court has already said that it's a question of fact. Well, what the Supreme Court said in Hobart specifically, and I know the court isn't, if quote, if he is so contributory negligent, he would be entitled to have the jury so instructed. So, I mean, the Hobart case. You almost need a stipulation for that sort of situation to happen. That's what I'm saying, and that's a very difficult standard to reach. Or do you do a motion and eliminate? When does that issue actually come up before the trial judge? Well, I asked the judge to strike the contributory negligence defense first in motions and limine, then throughout the trial, then at the close of the defendant's case, and finally during jury instructions. Obviously, I felt. And had he done any of that at the beginning of the trial, don't you think the entire trial would have changed? I mean, they wouldn't have been able to introduce certain evidence because. They wouldn't have been able to trash her the way they did. That's one perspective, but it's not necessarily the one I care to deal with. Maybe I shouldn't utilize that term. But obviously. You have to wrap it up. Obviously, Your Honor, we're asking for you to affirm the decision of the trial judge granting a new trial on damages only, and in the alternative, a new trial on all issues. And I don't think reinstating the jury amount cures the error or gets rid of the prejudice that occurred in this case. So those would be the two things. Obviously, A is what I prefer. B would be my second choice. Thank you very much. Thank you for your time and consideration. Mr. Brandt. Thank you, Your Honor. I'll be brief. A couple points to make. This is new, a new argument that the plaintiff has raised in response to the court's question about how does the, how were the alleged errors, the alleged trial errors connected to the stigma. So that hasn't been, that argument about there being a stigma hasn't been raised before. But my response to that, and I probably would think of more if I were writing a reply brief instead of doing this right now. But my first and foremost, I would say the damages here were loss of society damages. So I don't understand why there would be any connection between a stigma and loss of society damages that are being sustained by other, by family members. The second response to that is the very best you could do with that argument is to say not that it's a damages only. You could say this liability based error, which is a stigma, is within the damages, not that it's a damages only. So those are my two specific responses to this new argument that's being raised by the plaintiff. As far as the abuse of discretion issue, which of course the court is very appropriately focusing on, we also have cited case law in our brief that says where the court, where the trial court has applied the wrong legal standard, and I don't see any evidence of it applying any legal standard, frankly, in giving a new trial limited to damages, then it's not a long leap, to say the least, for the court to make a conclusion that there's been abuse of the court's discretion. And as far as the authority, the court asks where is your authority, we have on the problem, there are three cases cited in our brief that prove the exact opposite, and that's of course the Junker case and the two other cases, Salo and another additional case that addresses apportionment that's in our brief. So again, I feel that we've gone through this process and there is just not one basis that's been identified to the court that would address the issue of damages.